318 P.2d 671

Brent G. ORCUTT and Ethel B. Orcutt, his wife, Appellants,

v.

TUCSON WAREHOUSE & TRANSFER COMPANY, a corporation, Appellee.

No. 6326.

Supreme Court of Arizona.

Nov. 26, 1957.

202

———————

May, Lesher & Dees, Tucson, for appellants.

Darnell, Holesapple, McFall & Spaid, Tucson, for appellee.

STRUCKMEYER, Justice.

Appellants are the owners of a home near Tucson, Arizona. Sometime in the Spring of 1952, they closed their home for the summer and stored certain of their more valuable household goods and personal effects with appellee, the Tucson Warehouse & Transfer Company. In December, appellants arrived in Tucson from New York and immediately took part of their baggage to appellee's warehouse and requested that it, along with their other property in storage, be delivered to their home. Later there was a telephone conversation also directing the delivery. On the 8th day of December, 1952, appellants' property was placed on one of appellee's trucks, but while in transit caught fire and was almost totally destroyed. The cause of the fire is not explained.

Appellants brought suit, seeking to recover the value of the property destroyed which included miscellaneous clothing and other personal effects contained in suitcases, lockers and cases and household goods consisting of rugs, paintings, and antique furniture. The lower court found in favor of appellants, entering judgment for the full value of their personal effects in the sum of $3,492.50, further allowing recovery for items of household goods on the basis of 30 cents per pound for each article in the total amount of $735.90, and denied any recovery whatsoever as to certain other articles described by appellee as of "extraordinary value." This appeal questions the trial court's limitation of 30 cents per pound per article on the household goods, and the denial of any recovery as to the articles of extraordinary value.

Appellee's business is both that of a warehouseman and a common motor carrier for the transportation of property. However, the trial court concluded that the law of common carriers governs this case. We believe that this was correct. The law will look to the real transaction, and if the contract be, in fact, one for transportation, the undertaking will be considered as that of a common carrier. Kettenhofen v. Globe Transfer & Storage Co., 70 Wash. 645, 127 P. 295, 42 L.R.A., N.S., 902, Ann.Cas.1914B, 776.

In the instant case, no signed contract of carriage was entered into by the parties, but in the absence of any statutory provision to the contrary, no particular form or solemnity of execution is re-

quired to sustain a contract of a common carrier to transport goods. 9 Am.Jur. 658, Carriers, § 382. The contract of carriage consists of the Bill of Lading, Louisville & N. R. Co. v. Central Iron & Coal Co., 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900, and the Tariff as manifested by the words of the Tariff. Atlantic Coast Line R. Co. v. Atlantic Bridge Co., 5 Cir., 57 F.2d 654.

 In this state a common carrier is an insurer for the safe transportation of goods entrusted to its care unless the loss is due to one of four specific causes, none of which admittedly apply to this case. Southern Pac. Co. v. Itule, 51 Ariz. 25, 74 P.2d 38, 40, 115 A.L.R. 1268; and in the absence of any stipulation to the contrary, the carrier is liable for the market value of the goods. McClure v. Johnson, 50 Ariz. 76, 69 P.2d 573. As said in Vacuum Oil Co. v. Rotterdamsche Lloyd, 2 Cir., 31 F.2d 974, 975:

> " * * * This is just. Had the contract for transportation been carried out, the shipper would have had the value of his goods at that time and place, less the freight paid. His loss by the carrier's breach of contract is the difference between what his position would have been, had the contract been performed, and his situation as it is. * * * "

If there is a stipulation for the limitation of liability by the carrier, it must have also held itself out as being in readiness to transport freight without such limitation and if this is not done, the limitation of liability is void and not operative. Union Pacific R. Co. v. Burke, 255 U.S. 317, 41 S.Ct. 283, 65 L.Ed. 656.

Appellee is the holder of a certificate of convenience and necessity to transport as a common motor carrier of property. We are concerned only with the following two classifications established therein: (1) Freight and baggage in Tucson and vicinity; (2) Household Goods between all points and places in Arizona. Effective September 15, 1951, there was established for appellee Local Freight Tariff No. 2–D. It is a document of 42 pages in length applicable to six common motor carriers doing business in the vicinity of Tucson, including the appellee. The classifications established in appellee's certificate of convenience and necessity are not strictly followed in the Local Tariff No. 2–D. Rather, the freight tariffs are grouped in three general categories. By agreement, we are concerned only with category 3, entitled "Commodity Rates." The general category "Commodity Rates" is divided into two classifications or sections. The first section contains Items 600 through 630 pertaining to Household Goods. "Household Goods" is defined in both the certificate of convenience and necessity and in Item 600 as:

> "The term 'Household Goods' means the personal Effects and Property used,

or to be used, in a dwelling when a part of the equipment or supply of such dwelling; Furniture, Fixtures, Equipment and the Property of stores, offices, museums, institutions, hospitals, or other establishments when a part of the stock, equipment, or supply of such stores, offices, museums, institutions, hospitals or other establishments; and Articles, including Objects of Art, Displays, and Exhibits, which because of their unusual nature or value require specialized handling and equipment usually employed in moving household goods."

The basis of the charges under Items 600 through 630 is cents per hundred pounds according to the number of miles carried. This section of the Tariff is plainly established to conform to classification 2 of appellee's certificate of convenience and necessity.

The second section contains Items 780 through 810. Item 780 is entitled "Hourly Rates for Special Service when so requested by shipper or consignee—also— Hourly Rates for Moving Household Goods and Personal Effects in moving van (truck) service (other than as otherwise provided in this section.)" These items are not dependent for their charges upon the weight of the articles or shipment transported in cents per hundred pounds nor upon the distance carried. The rates are predicated upon the type of equipment used, together with the number of drivers and helpers charged on an hourly basis.

Item 780 of the Tariff has a footnote attached which limits the liability of the carrier when transporting household goods thereunder to a "declared or released value of 10 cents per pound per article." Item 600 purports to carry household goods at a released value of 30 cents per pound per article with the right to increase the valuations by paying a larger rate. By section 5 of Item 620, a stipulation is inserted that the carrier is not liable for any articles of extraordinary value unless there is a special agreement.

It is appellants' position that the release valuation applicable to Item 780 of 10 cents a pound per article is void for the reason that there is no alternative rate for transportation under this Item by which the carrier's liability might be increased to the full value of the shipment. Accordingly, it is their contention that they are entitled to recover, as under common law liability, the entire loss sustained. The trial court was of the view that the limitations of liability found in Items 600 and 620 were applicable because of appellants' knowledge of the tariff conditions expressed in Items 600 and 620. It entered judgment on the theory that appellants were estopped to deny that an alternative rate was available to them by which the carrier would be liable for the full valuation of the household goods. In this we think the trial court committed error.

Appellee's liability is not dependent upon the fact that appellants knew they had available to them a different method embodying different rates and different conditions of carriage by which they could have shipped their household goods; rather, liability is dependent upon the duties and obligations and the respective rights and responsibilities as established in the actual contract of carriage, not what it might have been had appellee been gifted with precognition of the impending fire. If the contract of carriage was under the tariff conditions contained in Items 780 and 790 and not under the conditions contained in Items 600 through 630, then the trial court has given effect to conditions or stipulations which were not a part of the contract nor understood or intended to be a part of the contract and has written a new contract for the parties by estoppel. This it may not do. We have said that estoppel may be urged for the protection of a right but that it can never be used to create rights. Madrigal v. Industrial Commission, 69 Ariz. 138, 210 P.2d 967. Nor can a contract be formed by estoppel. Deering-Milliken & Co., Inc., v. Modern-Aire of Hollywood, 9 Cir., 231 F.2d 623; Tiffany v. Rothschild, Okl., 258 P.2d 629; Mercer v. Knox, Tex.Civ.App., 193 S.W.2d 885.

We observe that the actual shipment was a mixed shipment of household goods, baggage, and personal effects. Under appellee's certificate of convenience and necessity, it could only be transported under classification 1, "Freight and baggage" and not under classification 2, "Household Goods" which is by definition limited to " * * * personal Effects and Property used, or to be used, in a dwelling *when a part of the equipment or supply of such dwelling; * * * *"*. Neither could appellee lawfully charge transportation of this shipment on the basis of the charges set forth in Items 600 through 630; it could only be charged under the applicable classification of the Tariff, Item 780, as "Hourly Rates for Moving Household Goods and Personal Effects in moving van, etc."

The shipment not only could not have been lawfully shipped under any Item except 780 of the Tariff, but it was actually shipped under Item 780. The Bill of Lading provides: "The property covered by this Bill of Lading is shipped subject to the legally published Bill of Lading Conditions in the tariffs or classifications governing the *rate* under which this shipment is transported." The hourly rate specified in the Bill of Lading was $6.75. The Tariff specified, under Item 780, an hourly rate of $4.50 for van type equipment and driver, plus $2.25 for a general helper. Manifestly, since the Bill of Lading provided for the *rate* of $6.75 per hour, the property was actually shipped under the Tariff Schedule Item 780.

Not only was the actual shipment under Item 780, but the evidence is specific that

appellee intended that it be carried thereunder. Mr. L. B. Hulett, an officer of the Tucson Warehouse & Transfer Company testified:

"Q. And the rate charged was simply pursuant to the provisions of 780 and 790, which carry a released valuation?

"A. That is correct."

And again on cross-examination testified:

"Q. On this shipment you charged Mr. Orcutt $6.75 an hour, taken from sections 780 and 790 of the tariff, is that correct?

"A. Yes, sir, that is correct."

We therefore conclude that the conditions and stipulations contained in Items 780 and 790 constitute the contract of the parties and the whole of it, neither more nor less, and they alone govern the rights and liabilities.

As pointed out, Item 780 specifically provides for a "declared or released value of 10 cents per pound per article." The trial court concluded as a matter of law that defendant's liability with respect to personal effects as distinguished from household goods was unlimited for the reason that Item 780 did not provide for an alternative rate based on increased liability. This conclusion conforms to the general rule that a stipulation for limitation of liability in a contract of a common carrier is void unless the shipper is offered the choice between such a stipulation and one imposing on the carrier full common law liability. While appellee devotes a considerable portion of its brief to argument that the 10 cents per pound per article stipulation is valid, it has neither cross appealed nor assigned as error the conclusion of law of the trial court nor the judgment predicated on such conclusion. It is well settled in this jurisdiction that argument by an appellee that error was committed in the lower court will not be considered in the absence of either a cross appeal or cross assignments of error. Krauth v. Billar, 71 Ariz. 298, 226 P.2d 1012.

Because the shipment was subject to the conditions and stipulations of Items 780 and 790 and not to Items 600 through 630, and because the stipulation for a released valuation of 10 cents per pound per article is void, the trial court erred in not granting judgment in favor of the appellants for the full value of all the articles shipped as of the date of the promised delivery. Neither the limitation of 30 cents per pound per article nor the limitation as to liability for articles of extraordinary value are applicable. The appellee's argument that the testimony was not sufficient to enable the trial court to arrive at a proper value of the articles found to be personal effects will not be considered in the absence of the cross appeal or cross assignment of error.

It is therefore ordered that the judgment of the trial court be reversed with directions to enter judgment in favor of the appellants for the sum of $3,492.50, being the value heretofore found for the personal effects, and also the full value of the household goods, and the full value of all other articles destroyed. If the court below is in doubt as to the precise valuations to be given, it is at liberty to direct the taking of further testimony in aid of the rendition of an appropriate judgment.

Judgment reversed with directions.

UDALL, C. J., and WINDES, PHELPS and JOHNSON, JJ., concur.