730 P.2d 226

Laurie Ann **HELTZEL**,
Plaintiff-Appellee,

v.

**MECHAM PONTIAC, an Arizona corporation, Evan Mecham and Jane Doe Mecham, his wife, Defendants-Appellants.**

**No. 1 CA–CIV 8081.**

Court of Appeals of Arizona,
Division 1, Department D.

Jan. 23, 1986.

---

**7.** After a final award is made, A.R.S. § 23–1067 governs all lump-sum commutations of the award.

Mark D. Winemiller, Phoenix, for plaintiff-appellee.

Morris, Walker & Mecham, P.C. by M. Kent Mecham, Jeffrey A. Murphy, Phoenix, for defendants-appellants.

SHELLEY, Judge.

This is an appeal by Mecham Pontiac from a jury verdict and judgment in favor of Laurie Ann Heltzel for both damages and punitive damages.

On December 28, 1982, Laurie Ann Heltzel executed a purchase order for a new 1982 Pontiac Trans Am automobile from Mecham Pontiac, an automobile dealership located in Glendale, Arizona. The purchase order credited Heltzel with $1,450.00 for trading in her 1973 Volkswagen Beetle and $300.00 as a cash down payment. Heltzel left a check for $300.00 with Mecham that evening. The purchase order expressly provided that it was not binding until a financing institution had accepted Heltzel's credit application. In order to qualify for financing, Heltzel arranged for her brother-in-law, James Maher, to be a co-signer on the loan. Maher submitted his credit application to Mecham Pontiac on December 29, 1982.

Heltzel was anxious to obtain the Trans Am before the ensuing three-day holiday weekend. Her desire to obtain the Trans Am at that time was based in part on her wish to take advantage of a special loan interest rate of 10.9% which was being offered by General Motors Acceptance Corporation (GMAC) through December 31, 1982.

The parties vigorously contested the pertinent events from December 29 to December 31, 1982. We must view the evidence in a light most favorable to upholding the judgment. *Thompson v. Sun City Community Hospital, Inc.*, 142 Ariz. 1, 4, 688 P.2d 647, 650 (App.1983). So viewed, the record indicates the following.

Maher received a phone call from Larry Noojin, the salesman at Mecham Pontiac who dealt with Heltzel, and was told that "everything went through" and to make arrangements to come down and sign the paperwork. Accordingly, on December 31st Heltzel and Maher returned to Mecham Pontiac to sign the necessary papers and leave Heltzel's trade-in vehicle, the 1973 Volkswagen.

While they were waiting to sign the papers, Heltzel and Maher entered into a conversation with Evan Mecham, the president and primary stockholder in Mecham Pontiac. Mecham congratulated Heltzel on her purchase and stated that he had contacted GMAC by telephone and was told that the loan had been approved. Heltzel was also told that she would need an additional down payment before the first payment under the contract and loan. She made arrangements for payment of an additional $500.00 by leaving two checks for $250.00 plus two $250.00 promissory notes to Mecham Pontiac. She also signed over the title of the Volkswagen to Mecham Pontiac, executed a retail installment sales contract which incorporated the basic terms of the purchase order, and drove the Trans Am home.

On Monday, January 3, 1983 Mecham Pontiac sold Heltzel's trade-in Volkswagen. That same day Mecham Pontiac learned that GMAC had not approved Heltzel's credit application. On January 6, 1983,

Mecham Pontiac contacted Heltzel, informing her that her loan had not been approved and demanding that she return the Trans Am or obtain other financing. At this point, the special interest rate of 10.9% was not available. Heltzel did not return the Trans Am and on the following day Mecham Pontiac repossessed the Trans Am by removing it from where it was parked while Heltzel was at work.

Heltzel rented a vehicle and later purchased a replacement vehicle. She brought an action against Mecham Pontiac for breach of contract and conversion. This matter was tried to a jury which rendered a verdict in favor of Heltzel for $2,000.00 in compensatory damages and $8,812.00 as punitive damages. Mecham Pontiac appeals from this judgment.

The issues before this court are:

(1) Did the trial court err by submitting to the jury the issue of equitable estoppel?

(2) Did the record show sufficient evidence to warrant an instruction regarding punitive damages?

(3) Did the trial judge err by failing to instruct the jury regarding the plaintiff's obligation to mitigate her damages?

## DID THE TRIAL COURT ERR IN SUBMITTING TO THE JURY THE ISSUE OF EQUITABLE ESTOPPEL?

The trial court gave the following jury instructions:

The parties agree that the credit of plaintiff and her co-signer was never approved by a financing agency. Therefore, that condition precedent to their contract was never satisfied.

When a condition precedent to a contract does not occur, that normally means that there is no contract. There is, however, an exception to this rule. That exception is the doctrine of "estoppel."

The plaintiff claims that the defendants are estopped from denying that the credit application of plaintiff and her co-signer was approved.

I will now define the doctrine of estoppel.

The court defined equitable estoppel and conversion for the jury and then instructed the jury as follows:

Plaintiff brings alternative claims of conversion against the defendants. That is, plaintiff claims that the defendants either converted the 1982 Pontiac Trans Am when they took it back from her, or they converted her 1973 Volkswagen and $300 deposit when they failed to return the Volkswagen and deposit at the time they took back the Trans Am.

You must find for the plaintiff and against the defendants on one or the other of these alternative claims. The outcome depends on your resolution of the issue of estoppel.

I have already instructed you that if you find in favor of the plaintiff and against the defendants on the issue of estoppel, you must find that the defendants breached their contract with the plaintiff when they took back the Pontiac Trans Am.

In the event that you find for the plaintiff and against the defendants on the issue of estoppel, you must also find that the defendants converted the Trans Am when they took it back from plaintiff.

If, however, you find against the plaintiff and in favor of the defendants on the issue of estoppel, you then must find that the defendants converted the plaintiff's 1973 Volkswagen and $300 deposit by selling the Volkswagen and not giving back the Volkswagen and deposit at the time they took back the Trans Am.

The reason for this instruction is as follows:

If defendants are estopped from denying the contract with the plaintiff, then they had the right to keep her deposit and sell the Volkswagen, but they did not have the right to take back the Pontiac Trans Am. If, however, they are not estopped from denying the contract, then there was no binding contract, and, although the defendants could take back

the Trans Am, they had no right to sell the Volkswagen and keep the deposit.

Mecham objected to the instructions on estoppel and requested the following instruction:

A contract may not be formed or created by estoppel. Estoppel may be urged for protection of a right, but it can never be used to create rights.

Mecham contends that the trial court permitted the jury insofar as the Trans Am was concerned to create a contract that neither party intended. Mecham further asserts that equitable estoppel may be used only as an affirmative defense rather than to support an affirmative claim.

■ As Mecham correctly points out, equitable estoppel cannot be used to write a new contract or create rights. *Orcutt v. Tucson Warehouse & Transfer Co.*, 83 Ariz. 200, 205, 318 P.2d 671, 674 (1957); *Mac Enterprises, Inc. v. Del E. Webb Dev. Co.*, 132 Ariz. 331, 336, 645 P.2d 1245, 1250 (App.1982). Heltzel argues that she did not bring an action to create a contract based on estoppel. Rather, she sought recovery based on an existing contract, *i.e.*, the purchase order signed on December 28, 1982, and the retail installment sales contract dated December 31, 1982.

■ Mecham argues that the purchase order did not create a contract because it contained conditions of formation rather than conditions of performance. To support this contention, Mecham relies on the following provision in the purchase order:

... This order *is not binding until* accepted by dealer, and if a time sale, (1) *purchaser's credit has been approved by a financing institution and it agreed to purchase a retail installment contract based on this order*, (2) Appropriate finance charge disclosures are made, and (3) *a security agreement executed*. Until a time sale order becomes binding purchaser may cancel it and recover any deposit made.... (Emphasis added)

It is obvious that the retail installment sales contract was the installment contract referred to in the quoted paragraph of the purchase order. The installment contract was signed by Heltzel. Apparently in the preparation of the document from the computer, the words "Mecham AMC—Renault Subaru" were printed in by the computer. The document had a place for the signature of Mecham or a Mecham agent but it was not signed.

In *Cavazos v. Holmes Tuttle Broadway Ford, Inc.*, 104 Ariz. 540, 456 P.2d 910 (1969), the parties had signed both a conditional sales contract and a work order. The Arizona Supreme Court stated:

If the conditional sales contract were the whole contract, there would be no problem. But the work order was signed by both parties as a part of the same deal. The two documents, therefore must be considered together as constituting the contract between the parties.

Therefore, even if the retail installment contract had been signed by a Mecham agent, the result would still be the same because they have to be construed together as part of the same deal.

The approval of Heltzel's credit by a financing institution and its agreement to purchase a retail installment contract based on the order go to the very heart of the contract. In fact, provision # 16 of the purchase order reads:

Purchaser acknowledges that credit purchase is subject to financing company approval; if rejected car must be returned to seller on demand.

In *Cavazos, supra*, appellant signed a work order which contained only the provision:

Purchaser acknowledges that credit purchase is subject to finance company or bank approval. If rejected, car must be returned to seller on demand.

104 Ariz. at 541, 456 P.2d at 911. That provision is virtually identical to provision 16 of the purchase order in this case. That appellant was unable to obtain a loan from the credit union. The Supreme Court stated:

It follows that the deal was *contingent* upon the obtaining of a loan from the credit union *or* the parties never agreed upon the terms of the sale. *In either case there was no contract*, and the dealer owed plaintiff the duty to return her car when she returned the new Mustang. It follows that defendant's refusal to return the car to plaintiff was a conversion. (Emphasis added)

104 Ariz. at 543, 456 P.2d at 913.

In the case at bar, the purchase order not only had the *Cavazos* provision but also the provision that it was not to be binding until purchaser's credit had been approved, etc. Heltzel's credit was not approved. Approval was in the sole control of a third party. Appellee admits that Mecham was not the agent of the financing institution (GMAC).

In *Toland v. Kaliff*, 435 S.W.2d 260 (Tex. Civ.App.1968), there was a contract for the sale of real property. That contract provided that the contract was subject to the buyer obtaining an engineering inspection and approval of property. Earnest money had been deposited with the escrow agent and there was a liquidated damages provision in the event of breach of contract under which the real estate agent would receive one-half of the earnest money but not exceeding his regular commission in the event of breach of contract. An engineer inspected the property, found certain defects and discrepancies, and disapproved the property. The parties then entered into a mutual release of the earnest money, agreeing that the contract was null and void. The real estate agent filed suit, claiming the right to a commission and that the sum should have been paid from the earnest money. The court stated:

A condition precedent in the law of contracts may be *either a condition which must be performed before agreement of parties shall become a binding contract, or* may be a condition which must be fulfilled before duty to perform existing contract arises. *Perry v. Little*, supra; 17A C.J.S. Contracts § 338, pp. 318–319. In the case of *Reinert v. Lawson*, 113 S.W.2d 293 (Tex.Civ.App.—Waco

1938, no writ), the Court said: *"The parties to a contract may agree that it shall not become effective or binding until or unless some specified condition is performed or occurs, in which case there is no binding contract until such condition has been complied with.* 10 Tex.Jur. p. 52, § 29, and authorities there cited. Such a stipulation is called a "condition precedent." 10 Tex.Jur. p. 343, § 197, and authorities there cited. When a promise is subject to a condition precedent, there is no liability or obligation on the promissor and there can be no breach of the contract by him until and unless such condition or contingency is performed or occurs. (Emphasis added)

435 S.W.2d at 262. The appellant in *Toland* alleged waiver, based upon an agreement of mutual release of the earnest money provided for in the contract. The Court further stated:

The agreement of mutual release of the earnest money contract was not a relinquishment of the right to have all the conditions to *the formation of the contract* completed and complied with, and did not constitute a waiver of the condition precedent or a ratification of the contract. The trial court's finding that *a condition precedent to the formation of the contract* between the parties was not performed and that no contract between the parties had been formed is sufficiently supported by the record. The judgment of the trial court is affirmed. (Emphasis added)

435 S.W.2d at 263. In the case of *O'Brien v. Fricke*, 148 Neb. 369, 27 N.W.2d 403 (1947), the court was dealing with a suit for specific performance wherein an agreement was not to become effective until or unless the purchaser was able to consummate loans sufficient to pay the purchase price. He was unable to do this. The court stated:

In *Evans v. Platte Valley Public Power & Irrigation District*, 144 Neb. 368, 13 N.W.2d 401, 402 [1944], this court recently used language which has appli-

cation to the case at bar. Therein it was said:

" 'A condition precedent in the law of contracts either may be a condition which must be performed before the agreement of the parties shall become a binding contract, or it may be a condition which must be fulfilled before the duty to perform an existing contract arises.' 17 C.J.S. Contracts, p. 792, § 338. See, also, 12 Am.Jur. 849, sec. 296. *A contract, the fulfillment of which by express or implied agreement is made to depend upon the act or consent of a third person, over whom neither party has any control, cannot be enforced unless the act is performed or the consent given.* See 17 C.J.S. Contracts p. 940, § 456 subsec. f; 13 C.J. 634. And, except for fault of the promisor, reasons given for failure or refusal to act or give consent are immaterial. See 17 C.J.S. Contracts, p. 969, § 468, subsec. b, p. 939, sec. 456d; 13 C.J. 648.

"As usual, we find in the authorities a transposition of words but the same result. In *Federal Reserve Bank [of Richmond] v. Neuse Mfg. Co.*, 213 N.C. 489, 196 S.E. 848, 850 [1938], the court said:

" 'That a contract is not made so long as in the contemplation of both parties thereto something remains to be done to establish contract relations is too well established to require the citation of authority. * * *

" 'In negotiating a contract the parties may impose any condition precedent, a performance of which condition is essential before the parties become bound by the agreement. *A promise, or the making of a contact, may be conditioned upon the act or will of a third person.*' (Citations omitted)

In *Garner v. Grogan*, 136 Okl. 261, 277 P. 649 [1929], we find this statement: '*when* an obligation to pay money is, by agreement, *made to depend upon* the action of another party, over whom neither *party has control, payment cannot be exacted, unless the specific act is performed.*' (Citations omitted; emphasis added)

148 Neb. at 375, 376, 27 N.W.2d at 407, 408.

In *Orcutt, supra,* the court stated:

We have said that estoppel may be urged for the protection of a right but that it can never be used to create rights. *Madrigal v. Industrial Commission,* 69 Ariz. 138, 210 P.2d 967 [1949]. *Nor can a contract be formed by estoppel. Deering-Milliken & Co., Inc. v. Modern-Aire of Hollywood,* 9 Cir. [1955], 231 F.2d 623; *Tiffany v. Rothschild,* Okl. [1953], 258 P.2d 629; *Mercer v. Knox,* Tex.Civ.App. [1946], 193 S.W.2d 885. (Emphasis added)

83 Ariz. at 205, 318 P.2d at 674.

Since Heltzel's credit was not approved, no contract was formed so no rights existed. Equitable estoppel cannot create rights. The court erred in presenting the issue of equitable estoppel to the jury.

Of course, because no contract came into existence, Mecham had no legal right to exercise any control over Heltzel's Volkswagen, and its doing so constituted a conversion. However, since we are unable to determine whether the jury's assessment of damages was based upon a finding of conversion of the Trans Am or the Volkswagen, this matter must be reversed.

### DID THE RECORD SHOW SUFFICIENT EVIDENCE TO WARRANT AN INSTRUCTION REGARDING PUNITIVE DAMAGES?

Mecham argues that there was insufficient evidence to support an instruction on punitive damages. Punitive damages are applicable where the conduct of the wrongdoer is wanton, reckless, or shows spite or ill will, or where there is a reckless indifference to the interests of others. *See Sellinger v. Freeway Mobile Homes Sales, Inc.,* 110 Ariz. 573, 577, 521 P.2d 1119, 1123 (1974); *Continental Life & Acc. Co. v. Songer,* 124 Ariz. 294, 305, 603 P.2d 921, 932 (App.1979). We find from the record that there was sufficient evidence to raise a question for the jury with regard to punitive damages. The instruc-

tion on punitive damages was properly given.

## DID THE TRIAL JUDGE ERR BY FAILING TO INSTRUCT THE JURY REGARDING THE PLAINTIFF'S OBLIGATION TO MITIGATE HER DAMAGES?

The posture under which this case will be re-tried is such that it is unnecessary for us to rule on the plaintiff's duty, if any, to mitigate damages. That issue will have to be determined by the trial court in view of the posture of the case at the time when the jury instructions are settled.

Mecham's request for attorney fees on appeal is denied.

The judgment of the trial court is reversed and the case is remanded for retrial consistent with this opinion.

JACOBSON, J., concurs.

GRANT, Judge dissenting:

I respectfully dissent. The purchase order was a contract. The defendants are estopped from denying the contract with the plaintiff and are estopped from relying on the condition of performance.

"The vital principle of equitable estoppel is that a person who by his language or conduct leads another to do what he would not otherwise have done may not subject such person to loss or injury by disappointing the expectations on which he acted." *Bartholomew v. Superior Court*, 4 Ariz. App. 50, 52, 417 P.2d 563, 565 (1966) *quoting* 31 C.J.S. *Estoppel* § 63 (1964). The essential elements of equitable estoppel are a concurrence of the following:

(1) Conduct by the party to be estopped by which he intentionally or through culpable negligence induces another to believe and have confidence in certain material facts;

(2) Action by the parties so induced in reliance, justifiably taken, upon the apparent state of the facts; and

(3) Injury to the party so induced which is caused by his reliance.

*Joy Enterprises, Inc. v. Reppel*, 112 Ariz. 42, 45, 537 P.2d 591, 594 (1975), *citing Builders Supply Corp. v. Marshall*, 88 Ariz. 89, 352 P.2d 982 (1960).

Mecham appears to be arguing that this purchase order was simply an "agreement to agree." However, a review of the entire document leads to the conclusion that this document created a binding contract before conditions 1, 2 and 3 (set forth *ante* at 52, 730 P.2d at 229) occurred. It contains the necessary terms to establish the respective duties of the parties to the contract. Although the language indicates that the order is "not binding" until certain conditions come into being, this language is not the equivalent of stating that there is no contract.

*Restatement (Second) of Contracts* § 224 (1981) provides:

A condition is an event, not certain to occur, which must occur, unless its nonoccurrence is excused, before performance under a contract becomes due.

Comment c and Illustration 7 elaborate on the principle of § 224:

c. *Necessity of a contract.* In order for an event to be a condition, it must qualify a duty under an existing contract. Events which are part of the process of formation of a contract, such as offer and acceptance, are therefore excluded under the definition in this section. It is not customary to call such events conditions. But cf. § 36(2) ("condition of acceptance"). For the most part, they are required by law and may not be dispensed with by the parties, while conditions are the result of, or at least subject to, agreement. Where, however, an offer has become an option contract, e.g., by the payment of a dollar (§ 87), the acceptance is a condition under the definition in this section.[1]

When an event that is not normally part of the process of formation of contract is made an event upon which the performance of the

---

1. The Reporter's Note to Comment c to this section states in part:

7. A and B contract to merge their corporate holdings into a single new company. It is agreed that the project is not to be operative unless the parties raise $600,000 additional capital. The raising of the additional capital is a condition of the duties of both A and B. If it is not raised, neither A's nor B's performance becomes due.

Thus, under the Restatement position, only absence of an essential element of a contract i.e., offer, acceptance or capacity, would preclude contract formation. Applying this to the previously quoted provision in the purchase order, *ante* at p. 52, 730 P.2d at 229, only the absence of acceptance by the dealer would preclude the existence of a contract. It is undisputed that Mecham Pontiac accepted the purchase order as evidenced by the signature of its authorized agent. Thus, a contract was formed. The credit approval, finance charge disclosures and security agreement are conditions of performance.

The trial court correctly interpreted the financing requirement as a condition of performance which was to occur after the making of a valid contract. *See generally* 3A *Corbin on Contracts* § 628 at 16 (1960). While no Arizona cases appear directly on point, it is well established that a person can be estopped to assert the non-performance of a condition precedent. *See, e.g., Barton v. Chemical Bank*, 577 F.2d 1329 (5th Cir.1978) (party estopped from asserting the necessity of a written agreement as a condition to the creation of a security interest); *Hartford Electric Applicators, Inc. v. Alden*, 169 Conn. 177, 363 A.2d 135 (1975) (party estopped from demanding architect's certificate as a condi-

tion precedent to payment); *Beck v. Strong*, 572 S.W.2d 484 (Mo.App.1978) (party estopped to require exercise of an option within a five-year period as a condition precedent to purchase of property). *See generally* 3A *Corbin on Contracts* § 752 at 481. Therefore the jury instruction given by the court was a proper statement of the law.

The retail installment sales contract of December 31, 1982 incorporated the terms of the purchase contract with modifications as to an additional down payment of $500.00. This contract is a GMAC form provided by Mecham Pontiac and is signed by Heltzel and Maher. The creditor's signature line contains the printed name "Mecham AMC—Renault—Subaru." Evan Mecham testified that this was simply a computer printout which was not an acceptance by Mecham until signed by an authorized person. However, this document was used as the basis for getting Heltzel's additional down payment and promissory notes. Heltzel was not informed at the time she signed that she would have to return for an additional signature. Further, as previously discussed, a contract had already been formed by reason of executing the purchase order. I believe that the facts which are implicit in the jury's finding that Mecham was estopped from asserting failure of the financing condition would also estop it from denying its acceptance of this modification of the contract terms.

The majority relies on *Cavazos v. Holmes Tuttle Broadway Ford*, 104 Ariz. 540, 456 P.2d 910 (1969), in agreeing with Mecham that "even if the retail installment contract had been signed by a Mecham

---

contract is dependent, courts often describe it as a condition that must be performed before the contract comes into existence. [Citations omitted.] Similarly, inartistically drafted contracts may contain language such as: "this contract shall not come into existence until Event A occurs." As Illustration 7 suggests, it is better to view a contract as already in existence, but with the parties' respective performances subject to the specified event, which is a condition to their respective performances. However, there is no great substantive disparity between the terminology

used in this Comment and descriptions of such events as conditions to the existence of the contract. This Comment excludes from the definition of condition only the elements of contracts such as offer, acceptance and capacity, not specific events triggering performance simply because of the agreement of the parties. These latter, properly called conditions to the parties' performance, are what are often called conditions to the existence of the contract. Both this Comment and the case law agree that they are conditions.

agent, the result would still be the same because they have to be construed together as part of the same deal." *Ante* at 52, 730 P.2d at 229. Construing the purchase order and installment sales contract together does yield the same result: a contract was formed with a condition of performance which Mecham is estopped from relying upon.

Mecham also argues that Heltzel failed to establish one of the essential elements of estoppel, i.e. justifiable reliance. It claims that there is no evidence in the record to support the existence of justifiable reliance. I disagree.

Mecham argues that Heltzel admitted that she knew that her application for credit was to be submitted to GMAC and that neither Evan Mecham nor her sales person had authority to approve loans. It contends that she knew that neither Evan Mecham nor any other agent of Mecham Pontiac was in a position to speak for GMAC. Thus, it argues that any reliance which she may have placed on their statements was unjustified. Mecham Pontiac also argues that Arizona law imposes a duty to return a motor vehicle to the dealership when a prospective purchaser takes a vehicle and is later turned down on his or her application for financing, citing *Cavazos*.

The record in the instant case reflects that although Mecham Pontiac was not a GMAC agent, all of Heltzel's dealings with GMAC were through Mecham Pontiac and Mecham Pontiac provided her with GMAC forms. She was asked to sign a retail installment sales contract prepared by Mecham Pontiac indicating that financing had been approved and indicating the payments due on that financing. Mecham accepted Heltzel's $300.00 down payment and two checks for $250.00. There was evidence that Mecham Pontiac advertised financing through GMAC and was routinely the contact between its customers and GMAC as the financing institution. Finally, Mecham Pontiac gave possession of the Trans Am to Heltzel and accepted her Volkswagen as a trade-in. In light of all these circumstances, I find that Heltzel's reliance on Mecham Pontiac's actions including statements that her GMAC loan had been approved to be more than justifiable.

*Cavazos v. Holmes Tuttle Broadway Ford* does not support Mecham's contention that Heltzel was required as a matter of law to return the Trans Am when her financing was disapproved. In *Cavazos*, the prospective automobile purchaser was given possession of a new car prior to obtaining financing. A provision of the written contract specifically was that "[p]urchaser acknowledges that credit purchase is subject to Finance Company or Bank approval. If rejected, car must be returned to seller on demand." No such statements were made when Heltzel obtained possession of the Trans Am. *Cavazos* is not controlling in the instant case.

I believe this case is controlled by *Darner Motor Sales v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 682 P.2d 388 (1984), in which the supreme court applied the doctrine of equitable estoppel to an insurance policy contract. The court held that the doctrine was available to enforce higher limits of coverage which had been agreed upon orally by the parties but were not in the written policy. The holding of *Darner* was to the effect that standardized, boilerplate contracts should not be allowed to undercut the "dickered deal." 140 Ariz. at 395, 682 P.2d at 400. Such a holding seems particularly appropriate when applied to used car sales where the "dickered deal" is a practiced art form by the salesperson.

I would affirm the judgment of the trial court.