730 P.2d 235
**Laurie Ann HELTZEL,**
**Plaintiff-Appellee,**

v.

**MECHAM PONTIAC, an Arizona corporation, Evan Mecham and Jane Doe Mecham, his wife, Defendants-Appellants.**

**No. CV 86-0235-PR.**

Supreme Court of Arizona,
En Banc.

Dec. 19, 1986.

Reconsideration Denied Jan. 27, 1987.

Mark D. Winemiller, Phoenix, for plaintiff-appellee.

Morris, Walker & Mecham, P.C. by M. Kent Mecham and Jeffrey A. Murphy, Phoenix, for defendants-appellants.

PER CURIAM.

This is a petition for review filed by Laurie Ann Heltzel from an opinion of the court of appeals which reversed the judgment of the trial court. *Laurie Ann Heltzel v. Mecham Pontiac*, 152 Ariz. 49, 730 P.2d 226 (Ct.App.1986) (GRANT, J., dissenting). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), A.R.S. § 12-120.-24 and Rule 23, Ariz.R.Civ.App.P., 17A A.R.S.

· We granted the petition for review as to only one issue and that is whether, under the facts of this case, the seller is estopped from denying the existence of a contract for the sale of an automobile.

## FACTS

On December 28, 1982, Laurie Ann Heltzel went to Mecham Pontiac, located in Glendale, Arizona, to look for a new car. Larry Noojin, a salesman employed by Mecham Pontiac, worked with Heltzel. After Heltzel selected a 1982 Pontiac Trans Am, a purchase order was filled out and signed by Heltzel. Mecham Pontiac also signed the purchase order. There is no dispute that each party accepted the purchase order. The purchase order credited Heltzel with $1,450 for her 1973 Volkswagon Beetle, which had an odometer reading of 138,119 miles, and with $300.00 for her check given as a cash down payment. The total purchase price of the Trans Am was $13,543.64. The purchase order provided in pertinent part:

THIS ORDER IS NOT BINDING UNTIL ACCEPTED BY DEALER, AND IF A TIME SALE, (1) PURCHASER'S CREDIT HAS BEEN APPROVED BY A FINANCING INSTITUTION AND IT AGREES TO PURCHASE A RETAIL INSTALLMENT CONTRACT BASED ON THIS ORDER, (2) APPROPRIATE FINANCE CHARGE DISCLOSURES ARE MADE, AND (3) A SECURITY AGREEMENT EXECUTED. UNTIL A TIME SALE ORDER BECOMES BINDING PURCHASER MAY CANCEL IT AND RECOVER ANY DEPOSIT MADE.

Heltzel also executed a credit application for the purchase of the Trans Am. Anticipating that Heltzel's line of credit would be insufficient and thus not qualify her for financing, her brother-in-law, James Maher, agreed to co-sign for Heltzel's loan. Maher submitted his credit application to Mecham Pontiac on December 29, 1982. After Maher had returned home from Mecham Pontiac, he received a telephone call from Noojin who informed him that "everything went through," meaning that the General Motors Acceptance Corporation (GMAC) had approved the loan over the telephone. Noojin also told Maher that he and Heltzel should return to Mecham Pontiac to complete the remaining paperwork.

On December 31, 1982, Heltzel and Maher returned to Mecham Pontiac to complete the paperwork, which included signing over to Mecham Pontiac the title to Heltzel's 1973 Volkswagon, the trade-in vehicle. Heltzel was anxious to complete the transaction because the special financing interest rate offered by GMAC of 10.9% was to expire at the end of the year, and she wanted to begin the new year with a new car. Heltzel testified at trial that she would not have left her Volkswagon with Mecham Pontiac and signed over the title to the vehicle had she not been assured by Noojin and Mecham Pontiac that the loan had been approved by GMAC.

While waiting for the additional papers to be prepared, Heltzel and Maher spoke with Evan Mecham, the president and primary stockholder of Mecham Pontiac. Mecham congratulated her on her purchase of the Trans Am and told her that he had spoken by telephone with GMAC and had been informed that the loan was approved. A retail instalment sale contract was prepared, which incorporated the terms of the purchase order, and was executed by Heltzel and Maher with their signatures; in between the spaces providing "Other owner signs here" and "Creditor Signs" is typed "MECHAM–AMC–RENAULT–SUBARU." Heltzel also was told that an additional down payment of $500.00 was needed. Heltzel did this by executing two personal checks in the amount of $250.00 each, secured by two promissory notes also in the amount of $250.00 each. After all of the foregoing, Heltzel was given the keys to the Trans Am, which she drove home.

On January 3, 1983, Mecham Pontiac sold the trade-in Volkswagon to an automobile wholesaler for $375.00. That same day, Mecham Pontiac learned that Heltzel's credit application to GMAC had been turned down.

On January 6, 1983, Mecham Pontiac contacted Heltzel and told her that the financing had not been approved and demanded return of the Trans Am if she could not obtain other financing. The GMAC financing interest rate of 10.9%, unfortunately, no longer was available.

The next day, Mecham Pontiac repossessed the Trans Am by removing it from the parking lot of the building where Heltzel worked. Heltzel rented a vehicle and later purchased a replacement vehicle. Mecham Pontiac did not offer to return the cash down payment until January 21, 1983, after a telephone call was placed to the attorneys for Mecham Pontiac by an attorney Heltzel initially contacted to represent her interests. Heltzel testified, however, at trial that this offer was not communicated to her by her attorney.

Shortly thereafter, Heltzel retained her present attorney Lionel C. Estrada. Estrada wrote a demand letter to Mecham Pontiac on January 26, 1983. Estrada wrote a second letter on February 7, 1983, which stated that Heltzel demanded the following damages:

1. The value of her vehicle (what you sold it for);
2. Return of down payment;
3. Payment for rental incurred by my client;
4. Payment for her inconvenience and mental distress; and
5. Reasonable attorneys' fees.

The response received by Heltzel was a hand-written letter from Evan Mecham offering to cancel the transaction. Enclosed in the letter was a check from Mecham Pontiac to Heltzel in the amount of $675.00 (representing her initial cash down payment of $300.00 plus the $375.00 that the automobile wholesaler paid Mecham Pontiac for the trade-in Volkswagon), Heltzel's two personal checks to Mecham Pontiac each in the amount of $250.00 (for the additional down payment of $500.00), and the two promissory notes executed to secure the personal checks. Heltzel did not cash the $675.00 check and brought suit.

The trial jury found that Mecham Pontiac had committed a breach of contract and a wilful and wanton conversion of the new 1982 Pontiac Trans Am automobile. Damages awarded to Heltzel by the jury were assessed against Mecham Pontiac in the amount of $2,000 compensatory damages and $8,812 punitive damages. Mecham Pontiac and Evan Mecham appealed.

## CONTRACT FORMATION

Heltzel contends that the purchase order and the retail instalment sale contract created a contract upon which she may base her recovery. Mecham Pontiac contends that the purchase order did not create a contract because it contained conditions of formation, rather than performance, which had not been satisfied. We agree with Heltzel.

■ Heltzel was justified in viewing the purchase order and retail instalment sale contract as creating a binding contract; the terms were clear and unambiguous. *Cavazos v. Holmes Tuttle Broadway Ford, Inc.*, 104 Ariz. 540, 542–43, 456 P.2d 910, 912–13 (1969). Heltzel complied fully by paying her deposits to Mecham Pontiac. She had obligations under that contract but it was a contract nevertheless and, at the time of repossession of the Trans-Am, she was not in default under the contract.

## ESTOPPEL

■ We believe, however, that even if there was not a contract, Mecham Pontiac was estopped from denying a contract.

■ The doctrine of estoppel is well established in Arizona. *U.S. Fidelity and Guaranty Co. v. Stewart's Downtown Motors*, 336 F.2d 549, 556 (9th Cir.1964). The doctrine of equitable estoppel applies when the conduct of a party absolutely precludes the party from asserting rights which might have otherwise existed against another person who in good faith has relied upon the conduct and as a result of such reliance has changed his position for the worse. *Heckman v. Harris*, 66 Ariz. 360, 362, 188 P.2d 991, 992–93 (1948). Thus, the

doctrine of equitable estoppel arises when the acts or representations of one induce another to believe that certain facts exists, and the other acts upon such facts. *In Re Trigg's Estate*, 102 Ariz. 140, 141, 426 P.2d 637, 638 (1967). The essential elements of equitable estoppel are

1) conduct by which one induces another to believe in certain material facts; and

2) the inducement results in acts in justifiable reliance thereon; and

3) the resulting acts cause injury.

*Darner Motor Sales, Inc. v. Universal Underwriters Inc.*, 140 Ariz. 383, 394, 682 P.2d 388, 399 (1984).

Applying these elements to the facts in the instant case, we find first that Heltzel was told that her loan application had been approved by GMAC. Second, this information induced Heltzel to sign over the title to her car and make an additional down payment of $500.00, leading her to believe that the process was completed. Finally, Heltzel incurred economic injury because of the repossession of the Trans Am and an inability to get back her trade-in Volkswagon due to Mecham Pontiac's selling it to an automobile wholesaler.

 In the sale of goods, especially those sales involving automobiles, it is the consumer who relies upon the skill, knowledge and expertise of the salesman and dealer when making the purchase. Indeed, consumer reliance is expected. Thus it is, arguably, "up to the seller to show that a consumer did *not* rely on the conduct of the seller." Boyd, *Representing Consumers—The Uniform Commercial Code and Beyond*, 9 Ariz.L.Rev. 372, 385 (1967) (emphasis in original).

Mecham has failed to show that Heltzel did not rely upon the assurances made to her. Therefore, we agree with the dissent of Judge Grant in the court of appeals:

The holding of *Darner* was to the effect that standardized, boilerplate contracts should not be allowed to undercut the "dickered deal." 140 Ariz. at 395, 682 P.2d at 400. Such a holding seems par-

ticularly appropriate when applied to used car sales where the "dickered deal" is a practiced art form by the salesperson.

*Heltzel v. Mecham Pontiac*, 152 Ariz. 57, 730 P.2d 234 (Ct.App.1986) (GRANT, J., dissenting).

The opinion of the court of appeals is vacated. The judgment of the trial court is reinstated.

GORDON, V.C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.

HOLOHAN, Chief Justice, concurring.

I concur in the result only.