787 P.2d 1083

Deborah J. CAMPBELL, individually and on Behalf of Adam Michael Campbell and Jason Leslie Campbell, Plaintiff/Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant/Appellee.

No. 2 CA–CV 89–0096.

Court of Appeals of Arizona, Division 2, Department A.

Oct. 12, 1989.

Review Denied March 6, 1990.

See also, 155 Ariz. 102, 745 P.2d 160.

The Langerman Law Offices by Richard W. Langerman and Langerman, Begam, Lewis & Marks by Samuel Langerman, Phoenix, for plaintiff/appellant.

Ridenour, Swenson, Cleere & Evans by James Evans and Robert Beltz, Phoenix, for defendant/appellee.

## OPINION

FERNANDEZ, Chief Judge.

Appellant Deborah Campbell appeals from an adverse jury verdict in the suit she filed on behalf of herself and her two minor children against appellee State Farm Mutual Automobile Insurance Company. The issues in this case arise from the trial court's application of the Supreme Court's holding in *Gordinier v. Aetna Casualty & Surety Co.*, 154 Ariz. 266, 742 P.2d 277 (1987).

In November 1983, State Farm's insured George Sasenick renewed the insurance policies he carried on the three cars he owned. For one of the cars, a 1977 Gremlin, his son William was listed as a primary driver, and the premium for that car was calculated based on a male driver under age 25. The declarations page for each of the three policies listed George and his wife Patricia as the named insureds. William was then 19 years old, the youngest child and the only one still at home. In mid-December 1983, William bought the Gremlin from George. The title was not transferred until January 1984. On January 15, 1984 William moved out of George's house into his own apartment. He was married on January 28 and was involved in an accident in the early morning hours of January 29 while he was driving his father-in-law's car.

As a result of the accident, appellant Deborah Campbell's husband was killed. She sued William and obtained a default judgment in the amount of $3.6 million. William assigned his rights under the insurance policy on the Gremlin to Campbell who sued State Farm for bad faith breach of contract, seeking payment of the default judgment.

State Farm refused to defend William in Campbell's suit against him and refused to pay any amount under the policy because of the policy provisions on the applicability of coverage while an insured is driving a non-owned car. The pertinent language reads as follows:

Coverage for the Use of Other Cars

The liability coverage extends to the use, by an insured, of a newly acquired car, a temporary substitute car or a non-owned car.

\* \* \* \* \* \*

When we refer to a non-owned car, insured means:

1. the first person named in the declarations;

2. his or her spouse;

3. their relatives;....

The definitions page of the policy contains the following:

Relative—means a person related to you or your spouse by blood, marriage or adoption who lives with you. . . .

\* \* \* \* \* \*

You or Your—means the named insured or named insureds shown on the declarations page.

Because William no longer lived with George at the time of the accident, because he was driving his father-in-law's car, and because he was not a named insured on the declarations page, State Farm contends there is no coverage under the Gremlin policy.

After a series of summary judgment motions were filed, the trial court ruled that State Farm would be liable for bad faith if it were determined that coverage existed. With regard to that issue, the court ruled that although a father and son are involved here, the holding in *Gordinier* applies as well to this case.[1] The supreme court held in *Gordinier* that the policy provisions limiting the wife's coverage because only the husband was named in the declarations page were unenforceable under *Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co.*, 140 Ariz. 383, 682 P.2d 388 (1984). Finally, the trial court determined that the case would be submitted to the jury on the very narrow issue of whether George Sasenick understood at the time the policy was renewed that William would no longer be covered if he moved out of George's home. In so ruling, the court held that State Farm carried the burden of proof on that issue because it contended that one of the exceptions to the reasonable expectations doctrine listed in *Gordinier* applied to this case.

In addition to standard jury instructions, the jury was instructed as follows:

In this case the plaintiffs, Deborah Campbell and her children, suffered damages as the result of a traffic accident on January 29, 1984, which was caused by William Sasenick. The issue in this case is whether William Sasenick was insured by State Farm at the time of the accident on January 29, 1984.

I have already ruled that under Arizona law William Sasenick was insured by State Farm at the time of the accident, despite the language in the policy describing who is an insured, unless State Farm proves that at the time the State Farm policy was renewed in November, 1983, George Sasenick understood that his son William would not be insured after William left George's household to live elsewhere.

In this case, State Farm has the burden of proof. If you find that State Farm has met its burden of proof, then your verdict shall be for the defendant State Farm. If, on the other hand, you find that defendant State Farm has failed to meet its burden of proof, then your verdict shall be for the plaintiffs, Deborah Campbell and her children.

In reaching your verdict, you are not to attempt to interpret the existing policy between State Farm and George Sasenick, nor are you to interpret any other insurance policies of which you may be aware. Rather, the only issues you are to address is the one [sic] I previously described concerning George Sasenick's understanding.

Campbell argues on appeal that 1) the court erroneously denied her motion for judgment notwithstanding the verdict by incorrectly interpreting *Gordinier* and by denying her summary judgment motion on ambiguity; 2) the court erroneously denied her motion for new trial because the verdict was against the weight of the evidence; 3) the court incorrectly instructed the jury; and 4) the court erroneously rejected her offers of proof. We affirm.

## DENIAL OF MOTION FOR JUDGMENT N.O.V.

### A. *Interpretation of Gordinier*

■ Campbell contends that the trial court erroneously applied the holding in *Gordinier* and thus erroneously denied her

---

1. State Farm argues on appeal that the court erred in so ruling and that it should be granted summary judgment on that issue. We do not address that argument because State Farm did not file a cross-appeal. *Orcutt v. Tucson Warehouse & Transfer Co.*, 83 Ariz. 200, 318 P.2d 671 (1957).

motion for directed verdict. As Campbell notes, the Supreme Court ruled in *Gordinier* that the boilerplate policy provisions with regard to coverage for residents of the same household defeated the objective, reasonable expectations of the average insured. 154 Ariz. at 273–74, 742 P.2d at 284–85. The dispute here arises from the court's language regarding exceptions to that rule:

> The possibility remains that these limitations were called to Shawn's *or* Tina's attention, that Shawn and not Tina was the named insured for a specific reason, such as the request of either, or that for some other reason the transaction was accomplished in accordance with the understandings or wishes of the parties. If Aetna can prove this, we will enforce the limitation of coverage against Tina.

154 Ariz. at 274, 742 P.2d at 285 (emphasis in original). The evidence in this case was that George Sasenick never read the policy and that he had no discussion with the agent at the time it was renewed in November 1983 about the provisions at issue here. Thus, only the third exception can be applicable here.

The trial court ruled that the jury was to determine the subjective understanding of George Sasenick with regard to coverage. Campbell contends that the insured's subjective understanding is irrelevant and that the exceptions of *Gordinier* do not apply unless there is evidence that the insured actually discussed the policy provisions or reached an agreement with the agent on the policy terms. We believe Campbell is reading *Gordinier* too narrowly. She focuses on the language of the first two exceptions and attempts to impose them upon the third exception so as to require that any understanding George had about the policy provisions in question be the result of negotiations with his agent or the company. We do not find that restriction in the language. Instead it permits a showing that "for some other reason" the insured obtained the coverage he understood he was purchasing. *Id.*

Campbell also argues that *Gordinier* requires the jury to examine the objective understanding of a reasonable insured and not the subjective understanding of a spe-cific insured. The objective standard is indeed utilized in determining whether a policy provision is unenforceable under *Darner*. In this case, however, the trial court ruled as a matter of law that the provision was unenforceable unless one of the exceptions applied. Application of the exceptions requires an examination of a specific insured's subjective understanding. Therefore, we conclude that the trial court properly interpreted *Gordinier* and correctly denied Campbell's motion for directed verdict.

### B. *Ambiguity*

■ Campbell also contends the court erred in denying her motion for judgment notwithstanding the verdict, arguing that the policy is ambiguous because it does not state at what time a relative is required to be a resident of the same household—at the time the policy is issued or at the time of an accident. We find no merit to this contention. The policy is clear that no payments are made unless a loss occurs; coverage, therefore, depends on the facts that exist at the time of the loss.

> Nevertheless, the ultimate question for resolution still remains a *factual* [emphasis in original] determination whether Deborah Taylor was a resident of her mother's household *at the time of the accident* [emphasis added] and, therefore, was covered under her mother's policy.

*Mid–Century Insurance Co. v. Duzykowski*, 131 Ariz. 428, 430, 641 P.2d 1272, 1274 (1982).

### DENIAL OF NEW TRIAL MOTION

■ Campbell next argues that the trial court erred in denying her motion for new trial, contending that even under the standard employed by the trial court, State Farm failed to carry its burden of proof. She contends there was no evidence that George Sasenick understood the effect of the provisions in question at the time he renewed the policy in November 1983.

In support of that contention, Campbell cites George's testimony to the effect that he had no expectations as to coverage at the time William left his home. The time period referred to by that testimony, how-

ever, was January 1984, not November 1983. Campbell also cites George's testimony that he never read the policy, that he had never discussed the provisions with his agent, that he was unaware his name appeared first on the policies and that he was unaware of the significance of that fact. In addition, Campbell points out William's testimony that his father told him to "look for [his] own insurance" at the time he moved out of the house and that William believed he was covered until the policy expired in May 1984. Finally, Campbell cites George's testimony that he was aware he would receive a refund if he cancelled the policy before it expired and that refunds are greater the sooner a policy is cancelled, yet the evidence shows he did not cancel the policy until April 10, 1984.

That testimony was indeed presented. Campbell, however, has chosen to ignore other testimony that was also presented. George also testified that he had understood for a number of years that his children were covered under his policies until they left his household and then they were no longer covered. In addition, he testified that his expectation when he renewed his policies in November 1983 was that William would have the same coverage George did until he was no longer a member of George's household. George testified he did not recall ever having a discussion with William about purchasing his own insurance, and William testified his father never expressly told him he would be covered under the policy until it expired in May 1984. William also testified that he purchased his own insurance policy in March 1984.

Our responsibility in reviewing the denial of a motion for new trial is to determine whether the trial court abused its discretion, not to weigh the evidence. *Adroit Supply Co. v. Electric Mutual Liability Insurance Co.*, 112 Ariz. 385, 542 P.2d 810 (1975). We find sufficient evidence to support the jury's verdict and no abuse of discretion in the denial of Campbell's motion for new trial.

## JURY INSTRUCTIONS

Campbell also contends the court erred in refusing to give her six requested instructions. Each of the six asked about a specific issue purportedly based on the Supreme Court's list of exceptions to the reasonable expectations doctrine in *Gordinier*.

We find the court correctly refused the instructions. None of the six addresses the specific issue on which the case was tried: whether George understood that William would not be covered under the policy if he left George's household.

## EVIDENTIARY RULINGS

Campbell's final contention is that the trial court erred in rejecting her offers of proof. She complains that the court would not permit her to ask George's insurance agent whether a son who is a primary driver should be a named insured or to ask a State Farm claim representative whether a father is able to purchase a policy to insure his son. As Campbell notes, it is undisputed that if William had been listed as a named insured, he would have been covered for the accident of January 29, 1984. As she also notes, it is undisputed that George was unaware that his name was listed first on the policy and that he was unaware of the significance of that fact. Campbell argues that, therefore, State Farm should have listed William first on the policy, and the trial court erroneously excluded her proffered evidence. We agree with the trial court's rejection of the offers of proof. We fail to see how testimony on the possible methods of issuing insurance policies is relevant to the issue of George's understanding about his coverage at the time of the policy renewal. We find no error.

Appellee will be awarded attorney's fees on appeal upon compliance with Rule 21(c), Ariz.R.Civ.App.P., 17B A.R.S.

Affirmed.

ROLL, P.J., and HOWARD, J., concur.