785 P.2d 101

**Max T. MORGAN and Grace D. Morgan, husband and wife, Plaintiffs–Appellants,**

v.

**CITY OF PHOENIX, an incorporated municipality in the State of Arizona, Defendant–Appellee.**

**No. 1 CA–CV 88–188.**

Court of Appeals of Arizona, Division 1, Department D.

Dec. 28, 1989.

underlying facts or data on cross-examination.

Robert J. Hommel, Glendale, for plaintiffs-appellants.

Roderick G. McDougall, City Atty. by Philip M. Haggerty, Chief Counsel, Civ. Div., and Edward E. Brogan and Michael House, Asst. City Attys., Phoenix, for defendant-appellee.

FIDEL, Judge.

In preparation for the construction of the Squaw Peak Parkway, the City of Phoenix moved and allegedly damaged a trailer belonging to plaintiffs Max and Grace Morgan. This appeal concerns the plaintiffs' unsuccessful effort to recover damages from the City. By summary judgment, the trial court rejected plaintiffs' claims that the City's failure to provide them a pre-relocation hearing and to pay them benefits violated their rights under 42 U.S.C. § 1983. The trial court also granted summary judgment against plaintiffs' claims that the City converted their trailer and violated their rights under the Arizona Mobile Home Parks Residential Landlord and Tenant Act, A.R.S. §§ 33-1401 to 1491 (1987). We uphold summary judgment on all claims. We find that plaintiffs were precluded from proceeding under 42 U.S.C. § 1983 because state law provided them an adequate opportunity for relief. We find additionally that plaintiffs' state law claims were properly dismissed because they failed to comply with Arizona's notice of claim statute, A.R.S. § 12-821(A) (1984).

## A. BACKGROUND

In constructing the Squaw Peak Parkway, the City acquired the Palms Trailer Park and required the removal of each trailer leasing space within it. One of these trailers was occupied by Sandra Bond pursuant to a lease-purchase agreement with the plaintiffs. Although plaintiffs' title to the trailer was recorded with the Arizona Highway Department, the City did not initially discover their ownership. It was Bond who paid the trailer park rent, and, from the records of the trailer park, the City apparently believed her to be the tenant of the trailer space she occupied.

In February 1985, the City notified Bond to move within ninety days. In March, the City added that she was eligible to receive benefits for moving expenses, for the purchase of another trailer, and to supplement her rent in any trailer park to which she moved. That month, Bond stopped lease payments to the plaintiffs, though she stayed in their trailer through May 1985.

To assist Bond's purchase of a new trailer, the City paid her $12,281 in April 1985 and an additional $2,040.44 in July.

Meanwhile, on May 13, 1985, Max Morgan notified Donna Gahagens, a City relocation department employee, that he owned the trailer occupied by Bond. Bond by then had already been paid $12,281. Gahagen's telephone notes reflect that Morgan asked for moving expenses. The City neither offered such expenses nor scheduled a formal hearing to determine plaintiffs' right to benefits.

On May 15, 1985, the City notified Bond to remove the trailer by May 30 or the City would move it and store it at her expense. Plaintiffs were sent a copy of this letter. On June 18, 1985, the City wrote Bond that it would move the trailer on June 24, 1985. Plaintiffs were also sent a copy of this letter. Neither Bond nor plaintiffs moved the trailer from its park.

On June 21, 1985, plaintiffs' attorney advised the City that his clients were the trailer space lessees and requested a 90-day notice to move the trailer. The attorney also expressed plaintiffs' concern that, if Bond received benefits for a new trailer, Bond would fail to pay plaintiffs some $8,000 still due them under Bond's lease-purchase agreement. The City replied on June 25, 1985, that the trailer would be moved immediately.

On June 26, 1985, at the City's request, Frederick Mobile Home Service moved the trailer to a storage yard. During the move, the "expando unit," a room attached to the trailer, was destroyed. According to the City, Frederick Mobile Home Service "agreed to reconstruct, but went bankrupt before so doing." The City additionally asserts that the room was "obviously owner-built and done so poorly that the structure fell apart without mover's fault." Plaintiffs assert to the contrary that the City irreparably damaged the main body of the trailer and reduced a $10,000 unit to a salvage value of $500.

In September 1985, the City told plaintiffs that it would pay them "such relocation benefits for which [they] are eligible" if plaintiffs could prove that they owned the trailer. In October 1985, Max Morgan responded that the trailer had presumably been ruined by destruction of the attached room and exposure of the remainder to the elements.

In January 1986, the City informed plaintiffs that they were ineligible for benefits because "all eligible relocation benefits have been paid." The City later explained by interrogatory answer why it had paid benefits to Bond: "City policy requires that owner-occupant receive benefits, not a holder of legal title...." The City added that plaintiffs "would have been entitled to reimbursement ... [if they had incurred actual expenses] in moving the mobile home, but such was done at City expense after owners failed to move home after notice."

In August 1986, plaintiffs sued the City. Claiming relief under 42 U.S.C. § 1983, they alleged that the City had deprived them of property without due process. Plaintiffs added a common law claim for conversion and a statutory claim alleging violations of the Arizona Mobile Home Parks Residential Landlord and Tenant Act.[1]

Plaintiffs moved for partial summary judgment to establish the City's liability under § 1983. Attributing their grievance to a City policy that "requires that owner-occupant receive benefits, not a holder of legal title," plaintiffs claimed they were deprived of three distinct protected property rights:

> The right to a due process hearing and determination of their entitlement to benefits prior to forced relocation; the right not to have their mobile home taken and damaged without just compensation; and their business property interests in the tenancy agreement with the Palms Trailer Park, and their Rental Agreement with Option to Purchase with the Defendant, BOND, the terminations of which

---

**1.** We do not discuss plaintiffs' claims against other defendants, as they are not pertinent to this appeal.

were induced by the State, or a municipality thereof.

The City moved for summary judgment on all of plaintiffs' claims, resting its argument principally on plaintiffs' failure to comply with the notice of claims statute, A.R.S. § 12–821(A).[2] In violation of the requirements of that statute, plaintiffs failed to file a claim against the City within one year after their cause of action accrued. The trial court accepted this argument. Concluding that all of plaintiffs' claims were barred under A.R.S. § 12–821(A), it denied plaintiffs' motion for partial summary judgment and granted summary judgment to the City. From that ruling, plaintiffs appeal.

## B. PLAINTIFFS' § 1983 CLAIM AGAINST THE CITY

### 1. *The § 1983 Claim Was Not Subject to the State Notice Statute*

■ We first consider plaintiffs' § 1983 claim, and we note at the outset that the trial court's ground for disposition has been invalidated by an intervening decision by the U.S. Supreme Court. In *Felder v. Casey,* the Supreme Court held that a Wisconsin notice of claims statute was inapplicable to a state court action under § 1983. 487 U.S. 131, 108 S.Ct. 2302, 2314, 101 L.Ed.2d 123 (1988). The City concedes that *Felder* invalidates its earlier argument—and the trial court's conclusion—that the plaintiffs' § 1983 claims were barred under A.R.S. § 12–821(A). The City now emphasizes an alternative argument that the trial court did not reach—that plaintiffs failed to state a claim under § 1983. The City argues that the trial court reached the right result for the wrong reason and that we should affirm on this alternative ground. *Certified Collectors, Inc. v. Les-*

*nick,* 116 Ariz. 601, 603, 570 P.2d 769, 771 (1977). We take up the question whether plaintiffs have stated a claim under § 1983.

### 2. *Section 1983 Does Not Redress Procedural Due Process Claims Where State Law Provides an Adequate Remedy*

■ Section 1983 provides a limited private cause of action for damages resulting from the violation of constitutional rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State...., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1982).

Congress enacted § 1983: (1) to override "any invidious legislation by States against rights or privileges of citizens of the United States"; (2) to redress civil rights grievances that state law is inadequate to relieve; and (3) "to provide a federal remedy where the state remedy, though adequate in theory, [is] not available in practice." *Monroe v. Pape,* 365 U.S. 167, 173–74, 81 S.Ct. 473, 476–77, 5 L.Ed.2d 492 (1961).

In *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the U.S. Supreme Court considered whether a plaintiff may proceed under § 1983 when state law offers an adequate alternative remedy. There, Nebraska state prison officials lost an inmate's mail order hobby kit by neglecting proper prison mail procedures. *Id.* at 530, 101 S.Ct. at 1910. The inmate sued

---

**2.** § 12–821. Authorization of claim against public entity or public employee; definition

    A. Persons who have claims against a public entity or public employee shall file such claims in the same manner as that prescribed in the Arizona Rules of Civil Procedure, Rule 4(D) within twelve months after the cause of action accrues. Any claim which is not filed within twelve months after the cause of action accrues is barred and no action may be main-

tained except upon a showing of excusable neglect if the action is brought within the otherwise applicable period of limitations, provided that if there is no excusable neglect, and if the absence of excusable neglect is because of the conduct of the claimant's attorney, then the action shall proceed, and the public entity and public employee shall have a right of indemnity against the claimant's attorney for any liability assessed in the action.

under § 1983 to recover the value of the kit, alleging that the state had negligently deprived him of his property without due process. *Id.* The Supreme Court held that the inmate was not entitled to relief under § 1983 because state tort law offered a post-deprivation remedy adequate to satisfy the requirements of due process. *Id.* at 543–44, 101 S.Ct. at 1916–17. Finding no further process due, the Court stressed that § 1983 was not intended to "make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Id.* at 544, 101 S.Ct. at 1917 (quoting *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976)).

This analysis was refined in *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). In *Parratt,* the court had treated the plaintiff's negligently inflicted loss as a deprivation sufficient to warrant due process analysis. In *Daniels,* the court abandoned the suggestion that the Due Process Clause could even be "implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property." *Id.* at 328, 106 S.Ct. at 663 (emphasis in original). The plaintiff in *Daniels* was a prison inmate who attributed his fall on a prison stairway to a state official's negligence. *Id.* The Court stated:

> To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.

*Id.* at 332, 106 S.Ct. at 665.

In a separate concurrence, Justice Stevens objected to the Court's redefinition of "deprivation" to exclude negligence from its scope. *Id.* at 336–37, 106 S.Ct. at 677–78. He concurred, however, because, as in *Parratt,* state law offered an adequate tort remedy. *Id.* at 341–42, 106 S.Ct. at 679–80. We pause over Justice Stevens's concurrence because it offers a framework for analyzing whether state remedies preclude a cause of action under § 1983.

According to Justice Stevens, the Due Process Clause protects against three distinguishable kinds of constitutional violation:

1. "a violation of one of the specific constitutional guarantees of the Bill of Rights";
2. "a violation of the substantive component of the Due Process Clause";
3. an otherwise permissible deprivation rendered illegitimate by the state's "failing to provide appropriate procedural safeguards."

*Id.* at 337–38, 106 S.Ct. at 677–78.

Justice Stevens writes that violations within the first two categories may be vindicated under § 1983 regardless of the availability of a state law remedy. *Id.* These violations concern actions that "the Federal Constitution prohibits a State from taking ... 'regardless of the fairness of the procedures used to implement them.'" *Id.* at 338, 106 S.Ct. at 678 (quoting majority opinion, *Id.* at 331, 106 S.Ct. at 665).

He contrasts procedural due process claims, however, as "fundamentally different":

> In a procedural due process claim, it is not the deprivation of property or liberty that is unconstitutional; it is the deprivation of property or liberty *without due process of law*—without adequate procedures.

*Id.* at 338–39, 106 S.Ct. at 678 (emphasis in original). Only in claims of this category, according to Justice Stevens, is relief precluded under § 1983 by the availability of a constitutionally unobjectionable post-deprivation state law remedy. *Id.*

3. *Plaintiffs' 1983 Claim is a Procedural Due Process Claim*

Plaintiffs' § 1983 claim falls within this third category. In setting forth that claim, plaintiffs allege that the City violated their "right not to be deprived of property without due process of law." In their motion for partial summary judgment, plaintiffs add that the requisite due process was a pre-deprivation hearing:

> An essential principle of due process is that a deprivation of property be preceded by notice and an opportunity for a hearing appropriate to the nature of the

case, and that this hearing be granted *before* a person is deprived of any significant property interest.

(Emphasis in original.)

It is significant that plaintiffs do not assert that the City lacked the right to take or remove their trailer. Theirs is not, in other words, a claim that the City engaged in acts that "the Federal Constitution prohibits a State from taking ... 'regardless of the fairness of the procedures used to implement them.'" *Daniels*, 474 U.S. at 338, 106 S.Ct. at 678 (Stevens, J., concurring). Rather, plaintiffs assert that the City failed to *procedurally* accomplish removal in a manner that assured just compensation.

In their response to the City's motion for summary judgment, plaintiffs state:

> There are no state laws or procedures promulgated to compensate aggrieved persons for losses sustained *after* they have been deprived of property through eminent domain proceedings that occurred without formal notice or hearings required by eminent domain law. As a result, the Plaintiffs' sole remedy for seeking relief after they have been deprived of property without notice is 42 USC 1983.

This, we conclude, is essentially a *procedural* due process claim.

A Supreme Court majority has not yet adopted Justice Stevens's assertion in *Daniels* that other categories of due process claims can proceed under § 1983 despite the availability of adequate alternative state routes to relief. However, a procedural due process claim under § 1983 may be defeated, even under Justice Stevens's view, by the showing of an adequate state remedy. Thus, the validity of plaintiffs' § 1983 claim turns on the accuracy of their assumption that no state post-deprivation remedies were available. We hold that this assumption was incorrect.

### 4. *Plaintiffs Had an Adequate State Law Remedy*

■ An adequate state remedial path lay open to the plaintiffs in this case. Fair redress did not require a pre-deprivation hearing. If plaintiffs were wronged by the City, their property losses were fully compensable through a tort suit after the fact.

We distinguish *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), which concerned allegations of employment discrimination. A state fair employment practices commission extinguished Logan's administrative claim through a scheduling failure that Logan was powerless to control. *Id.* at 426, 102 S.Ct. at 1152. This procedural failure was actionable under § 1983 because, though tort damages were recoverable, such damages could substitute only inadequately for the lost administrative remedy of reinstatement with back pay. *Id.* at 436–37, 102 S.Ct. at 1158–59.

Here, by contrast, full damages were recoverable in tort, had the plaintiffs only timely sought them. As it happened, plaintiffs did not. In a later portion of this opinion, we uphold the trial court's dismissal of plaintiffs' state law claims for failure to comply with the notice of claims statute, A.R.S. § 12–821(A). This does not alter our conclusion, however, that plaintiffs had an adequate remedial *opportunity* under state law. As the Supreme Court stated in *Logan:*

> The State may erect reasonable procedural requirements for triggering the right to an adjudication ... [including] statutes of limitations.... And the State certainly accords *due* process when it terminates a claim for failure to comply with reasonable procedural ... rules.

455 U.S. at 437, 102 S.Ct. at 1158 (emphasis in original) (citations omitted); *see also Daniels*, 474 U.S. at 342, 106 S.Ct. at 680 (Stevens, J., concurring).

### 5. *Pietroniro Does Not Apply*

As an alternate ground for recovery, plaintiffs invoke the Arizona Relocation Assistance Act, A.R.S. § 11–961 to 974 (1977). The Relocation Act does not specify an enforcement mechanism for the rights that it establishes; plaintiffs argue that § 1983 provides that mechanism. They rely for this proposition on *Pietroniro v. Borough of Oceanport*, 764 F.2d 976 (3d Cir.1985),

*cert. denied,* 474 U.S. 1020, 106 S.Ct. 570, 88 L.Ed.2d 554 (1985). In *Pietroniro,* the plaintiff, who brought a § 1983 claim to enforce the terms of a *federal* statute, had to prove two things: (1) that the plaintiff's interest was protected under § 1983; and (2) that the federal statute had not established a comprehensive administrative enforcement scheme intended to preclude private suits. *Id.* at 980.

Plaintiffs stretch *Pietroniro* too far. The plaintiffs there sued to compel compliance with a *federal* statute. *Pietroniro* does not offer § 1983 as a federal statutory avenue for private enforcement whenever a *state* statutory benefit program fails to establish a preclusive administrative enforcement scheme.

Moreover, plaintiffs' claim under the Arizona Relocation Assistance Act is essentially a procedural due process claim. Plaintiffs argue, that is, that the state denied them certain hearing and determination rights provided by the Arizona Relocation Assistance Act and thereby took their property without due process. We have previously indicated that a denial of procedural due process is not actionable under § 1983 if state law remedies suffice.

6. *The Plaintiffs' Negligence Claim Was Not Remediable Under § 1983*

█ There is an additional basis for our decision. We have previously discussed the Supreme Court's holding in *Daniels* that mere negligence by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment. Plaintiffs' opening brief summarizes their claim to this court as follows:

> The Morgans brought a claim against the City under 42 U.S.C. § 1983 ... alleging that they had been deprived of property without due process of law by the City's removal and destruction of their mobile home, without hearing rights or just compensation. *The claim was premised upon allegations that the City paid substantial 'replacement housing' benefits to the lessee of the mobile home, co-Defendant, Sandra Bond, upon a neg-*

*ligent determination that she was the owner of the mobile home.*

(Emphasis added.) This acknowledgement that plaintiffs' claim sounds essentially in negligence is fatal to their ability to advance it under § 1983.

7. *Summary*

We summarize this discussion of plaintiffs' § 1983 claim by quoting the Supreme Court majority in *Daniels:*

> Our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society.

474 U.S. at 332, 106 S.Ct. at 665. That comment is applicable to this case. Plaintiffs' claim is one for tortious property damage. Because they had an adequate remedial opportunity under state law, they are precluded from proceeding under § 1983.

C. PLAINTIFFS' OTHER CLAIMS ARE BARRED

█ Plaintiffs argue that the trial court erred in concluding that their claims for conversion and for violations of the Arizona Mobile Home Parks Residential Landlord and Tenant Act were barred under the one-year notice of claims statute, A.R.S. § 12–821(A). They concede that their cause of action originally accrued in June of 1985, when the City "caused the removal and demolition of the mobile home." They argue, however, that the City "lulled [them] into a false sense of security" when it told them in September 1985 that they might be entitled to benefits. They claim that the City should be estopped from asserting that the one year notice of claims period began to run before the City actually denied them benefits in a series of letters in November to January of 1986. Thus, they argue, even if a year is measured from the earliest of these denials, they initiated a timely claim in August of 1986.

The City responds that plaintiffs' estoppel argument should not be considered be-

cause plaintiffs were untimely in presenting it to the trial court. Plaintiffs neither argued estoppel nor excusable neglect[3] in their written response to the City's motion for summary judgment, though the City's motion was heavily predicated on the statutory bar. Rather, plaintiffs first mentioned estoppel at oral argument on summary judgment and then briefed the issue when they moved for reconsideration of the trial court's adverse summary judgment ruling.

More significantly, as the City points out, plaintiffs have never submitted evidence on the issue of reliance, an essential element of any estoppel claim. *See Heltzel v. Mecham Pontiac*, 152 Ariz. 58, 730 P.2d 235 (1986). Though the record includes plaintiffs' correspondence with the City, plaintiffs have neither asserted by affidavit nor attempted to show by other evidence that they withheld filing a formal notice of claim in *reliance* on settlement representations by the City. They make this unverified assertion only in briefing to this court. Thus, their allegation of estoppel, even if timely, was inadequately grounded in the evidence.

In their reply brief, plaintiffs do not defend their estoppel claim against these arguments except to state without elaboration that "[t]he issue [of estoppel] is appropriately subject to review on this appeal." We find no error in the trial court's rejection of plaintiffs' estoppel claim.

### E. CONCLUSION

For the reasons set forth in this opinion, summary judgment against the plaintiffs is affirmed.

GRANT, C.J., and KLEINSCHMIDT, P.J., concur.

---

**3.** A.R.S. § 12–821(A) permits relief from the one year requirement "upon a showing of excusable neglect."