UNIVERSAL PREMIUM
ACCEPTANCE CORPORATION,
Plaintiff,

v.

PREFERRED NATIONAL
INSURANCE COMPANY,
Defendant.

No. CIV. A. 98–2464–GTV.

United States District Court,
D. Kansas.

Dec. 16, 1999.

Kent E. Whittaker, Cheryl Bloethe Linder, Morrison & Hecker L.L.P., Joan K. Rowland, Stinson, Mag & Fizzell, P.C., Kansas City, MO, for Universal Premium Acceptance Corporation, plaintiffs.

David R. Buchanan, Angela K. Hatley, Brown & James, P.C., Kansas City, MO, Derek H. Potts, for Preferred National Insurance Company, defendants.

### *MEMORANDUM AND ORDER*

VanBEBBER, Chief Judge.

Plaintiff brings this diversity action seeking damages for the failure to return unearned premiums allegedly due under multiple insurance policies. The case is before the court on plaintiff's motion for summary judgment (Doc. 53), and defendant's motion for summary judgment (Doc. 57). For the reasons set forth below, the court denies both motions.

### *I. Factual Background*

Plaintiff is a Missouri corporation with its principal place of business in Johnson County, Kansas. Plaintiff is engaged in the insurance premium finance business, loaning money to insureds for the payment of insurance premiums. Incident to each loan, plaintiff enters into a premium finance agreement, whereby it acquires the insured's right to cancel the underlying policy if the insured defaults on payments to plaintiff. Upon exercising this right, plaintiff is entitled to receive all unearned premiums due under the policy from the insurer.

Defendant is an insurance company located and incorporated in Florida. In January 1992, defendant entered into a written agreement with Wycon Corporation (Wycon), appointing Wycon to serve as its Underwriting Manager, authorized, among other things, to bind coverage and issue policies on behalf of defendant.

In August 1996, Wycon entered into a written agreement with an insurance agency located in Arizona named Transportation & Specialty Marketplace Agency (TSMA). This agreement appointed TSMA as an agent of Wycon authorized, among other things, to solicit business and bind coverage "as specifically authorized through written manuals, releases, and underwriting directions of [Wycon]." The agreement also authorized TSMA to collect, receive, and give receipts for premiums on business it placed with Wycon.

Plaintiff started doing business with TSMA in August 1996. In doing business, TSMA prepared and forwarded numerous premium finance agreements to plaintiff for acceptance. Each of these agreements contained an "Agent Certification" section which was signed by a representative of TSMA and contained the following language:

The undersigned agent hereby certifies that all policies listed above have been issued and delivered, and that the down payment as shown in the contract has been paid by or on behalf of the Insured, and that all policies listed herein were issued by this agency. The undersigned warrants that the above contract evidences a bona fide and legal transaction; that the Insured is of legal age and has capacity to contract, that the signature is genuine and that he has delivered a copy of this contract to the Insured. Upon termination of this Agreement or cancellation of any scheduled policies the undersigned agrees to pay the unearned premiums and unearned commissions to [plaintiff].

A number of these finance agreements related to policies allegedly issued by defendant. Plaintiff accepted the agreements, and made payments for premiums totaling in excess of $375,000, which TSMA accepted. Plaintiff claims that after each premium finance agreement was executed, it sent defendant a "Notice of Premium Financing" which requested that defendant confirm the terms of the underlying policies. The notices included the following language:

Instructions: Please examine this notice of premium financing carefully and either confirm its correctness or report any differences. Your prompt attention to this request will be appreciated.

[ ] I confirm all data for these policies are correct.

[ ] I have made necessary changes to your data

Plaintiff claims that, upon receiving these notices, defendant did not respond, but instead remained silent.

When numerous insureds failed to make required payments, plaintiff exercised its right to cancel those insureds' policies. Plaintiff demanded payment of all unearned premiums due from defendant. Defendant returned premiums with respect to some of the insureds' policies, but refused payment with respect to others, stating that, in those instances, no policies were ever issued.

## II. Standard for Judgment

Summary judgment is appropriate if the evidence presented by the parties demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A "genuine" issue of fact exists if the evidence is such that a reasonable jury could resolve the issue either way. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "material" if it is essential to the proper disposition of the claim. *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). The court must consider the record, and all reasonable inferences therefrom, in the light most favorable to the party opposing the motion. *Id.*

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Id.* at 670–71 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the moving party will not bear the burden of persuasion at trial, that party "may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671 (citing *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts from which a reasonable jury could find in favor of the nonmoving party. *Id.*

## III. Discussion

### A. Defendant's Motion for Summary Judgment

Defendant sets forth four grounds for relief in its motion for summary judgment,

three of which essentially rely on the premise that TSMA did not have the authority to bind policies on its behalf. For this reason, the court will address the validity of this premise before considering the specific grounds for relief.

Defendant argues that TSMA was authorized as its agent solely for the purpose of collecting premiums on its behalf, and did not have authority to bind policies. In support, it points to a letter written by its Vice President, Kenneth Sutter, that reads in pertinent part:

> The attached General Agent Authorization List [which includes TSMA] is a complete listing of all general agents which are currently authorized general agents of [defendant]. These general agents are authorized to collect and receive premium in trust for [defendant] subject to the terms and conditions of their agency contract with [defendant].
>
> [Defendant] does not maintain any Managing General Agents and retains sole authority with regard to binding, policy issuance, and transaction processing for all [of defendant's] policies. Only [defendant's] officers and managers are authorized to sign on behalf of and/or bind [defendant].

Plaintiff responds that TSMA did, in fact, possess authority to bind coverage for liability on behalf of defendant. In support, plaintiff first points to depositional testimony of Scott Weicholz, Treasurer of defendant, stating that TSMA "produced" business for defendant. The apparent assumption is that TSMA did more than collect premiums on already issued policies; instead, it "produced" business through the binding of policies.

Second, plaintiff points to the agency agreement between TSMA and Wycon. This agreement provides that TSMA shall have authority to solicit business, but that "[n]o binding authority is extended except as specifically authorized through written manuals, releases, and underwriting directions of [Wycon]." Wycon's manual entitled "General Procedural Guidelines" gives binding authority to its contracted general agents under specified circumstances, stating:

> If an account meets the current underwriting guidelines, a contracted General Agent of WYCON will have the authority to bind business under [specified] programs .... When an agent binds an account, an "advice of binder" and application, including any applicable supplements and worksheets must be sent to WYCON by facsimile within 24 business hours of requested effective date for new business and for renewals.... If all underwriting information conforms to the current guidelines, the request for binding will be honored and the agent may issue a binder. The binder shall be for no more than sixty (60) days and a copy must be forwarded to WYCON immediately upon issuance. The agent may not delegate any authority to a subproducer or any other party.

Plaintiff contends that even though this agreement is between Wycon and TSMA, it serves to authorize TSMA to bind policies on behalf of defendant, because either Wycon and defendant are one and the same "for all practical purposes," or defendant authorized Wycon to enter into such agreements and appoint third-parties such as TSMA to serve as subagents to solicit business and bind policies on its behalf.

■ In support of its contention that Wycon and defendant are one and the same, plaintiff points out that "Wycon performed all management functions for [defendant], as [defendant] had no employees at all." Defendant, on the other hand, argues that Wycon and defendant are not the same, but rather are two separate entities. The court finds that it does not need to address whether Wycon and defendant are the same, however, because plaintiff is able to establish, at minimum, a genuine issue of material fact under its alternative theory—that Wycon was authorized by defendant to appoint TSMA as a subagent, thereby authorizing TSMA to bind policies on behalf of defendant.

The agency agreement between Wycon and defendant appoints Wycon as defendant's Underwriting Manager, authorized, among other things, to bind coverage and issue policies on its behalf. The agreement states that

> [Wycon] shall solicit business through ... licensed independent insurance agents ... [and] shall be free to exercise its own judgment as to the persons whom it will solicit and the time and place of solicitation. [Wycon] shall have the fullest discretion as to the method and means of operation of its business; however, the authority ... shall not permit [Wycon] to alter the general practices and corporate policy of [defendant].

Plaintiff argues that the terms of this agreement authorize Wycon, as defendant's agent, to appoint third-parties to serve as subagents for defendant. Further, plaintiff argues that, pursuant to this authority, Wycon appointed TSMA as a subagent authorized to bind policies on behalf of defendant. The court finds that a reasonable fact-finder could reach this same conclusion. The agency agreement between Wycon and defendant authorizes Wycon to bind and issue policies on its behalf, as well as solicit business through licensed independent insurance agents such as TSMA, and it authorizes it to do so with the "fullest discretion" as to the method and means. The agreement does not preclude Wycon from appointing third-parties to serve as subagents. Furthermore, as plaintiff points out, Wycon is not an insurer; when Wycon entered into the agency agreement with TSMA, authorizing the latter to bind policies of insurance, it could only be referring to insurance policies issued or to be issued by an insurance company such as defendant.

Moreover, in making its argument, defendant seems to suggest that the agreement between TSMA and Wycon does define the limits of TSMA's authority to act on its behalf. While it states that the agency agreement between TSMA and Wycon is solely between TSMA and Wycon, it states that, with regard to defendant, TSMA was "explicitly limited to premium collection and other functions not at issue in this lawsuit," and cites to the agency agreement between TSMA and Wycon for support.[1]

In light of the collective evidence, the court determines that a reasonable fact-finder could conclude that, at the times relevant to this lawsuit, Wycon was both authorized to and did appoint TSMA as a subagent, thereby authorizing TSMA to bind policies on defendant's behalf. Having reached this conclusion, the court now turns to the specific arguments made by defendant in support of its motion for summary judgment.

█ Defendant first argues that it is entitled to summary judgment on Count I of plaintiff's amended complaint. Count I states that defendant is obligated by law, including without limitation Arizona Revised Statute § 6–1416, to return to plaintiff the unearned premiums.[2] Section 6–1416 provides in relevant part:

> If a financed insurance policy is canceled by any party, the insurer shall return the gross unearned premiums due under the insurance policy directly to the premium finance company for the account of the insured as soon as reasonably possible ....

Defendant argues that plaintiff cannot recover under section 6–1416 because it

---

1. *See* Defendant's Memorandum in Support for its Motion for Summary Judgment, at p. 7.

2. Where a federal court exercises diversity jurisdiction, it must apply the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In Kansas, a contract issue is governed by the rule of lex locus contractus (the law of the place where the last act necessary for the contract's formation was completed). *Simms v. Metropolitan Life Ins. Co.*, 9 Kan.App.2d 640, 685 P.2d 321, 324 (1984). The issues in this case involve policy agreements which were allegedly issued and warranties which were allegedly made in Arizona. For this reason, Arizona law is applicable to plaintiff's claims.

did not issue insurance policies with regard to the accounts for which plaintiff is claiming unearned premiums; further, because it did not issue the policies, it neither collected nor has any premiums to return. Defendant concedes that TSMA was authorized to collect premiums on its behalf. It argues, however, that TSMA was not authorized to, nor did it bind coverage with respect to the relevant accounts. Pursuant to the court's above analysis, however, the court finds that a genuine issue of material fact exists with respect to whether TSMA had authority to bind coverage on behalf of defendant. If a fact-finder first found that TSMA could and did, in fact, bind coverage with respect to the policies at issue, it could then find that defendant, through its agent, collected premiums on such policies, and that those premiums should now be returned pursuant to section 6–1416. The court denies defendant's motion for summary judgment with respect to Count I of plaintiff's amended complaint.

Defendant next argues that it is entitled to summary judgment on Counts II and III of plaintiff's amended complaint. Count II alleges that in each premium finance agreement, TSMA warranted on behalf of defendant that the underlying transactions were bona fide transactions, the signatures were genuine, and the policies referred to had been issued and delivered. Count III alleges that TSMA's execution of the premium finance agreements operated as due execution of the agreements by defendant. Defendant argues that it is entitled to summary judgment on both counts because plaintiff cannot show that TSMA had the authority to (1) make warranties, (2) bind coverage, (3) execute premium finance agreements, or (4) issue policies on its behalf.

In its argument to this court, however, defendant focuses only on the assertion that TSMA did not have authority to bind policies on its behalf. Pursuant to the court's above analysis, the court finds that a genuine issue of material fact exists as to whether TSMA had authority to bind policies on behalf of defendant, and thus the

court denies this portion of defendant's motion.

Defendant finally argues that it is entitled to summary judgment on Count IV of plaintiff's amended complaint. Count IV alleges that plaintiff reasonably relied, to its detriment, on defendant's silence with respect to the written notices that it sent regarding its premium finance agreements. Plaintiff essentially asserts that defendant should be estopped from denying the existence of the policies referred to in the notices due to its silence.

■ The doctrine of estoppel is well established in Arizona. *See Heltzel v. Mecham Pontiac*, 152 Ariz. 58, 730 P.2d 235, 237 (1986). "The doctrine of equitable estoppel applies when the conduct of a party absolutely precludes the party from asserting rights which might have otherwise existed against another person who in good faith has relied upon the conduct and as a result of such reliance has changed his position for the worse." *Id.* The doctrine arises when the acts or representations of one induce another to believe that certain facts exist, and the other acts upon such facts. *See id.* at 238. The essential elements of equitable estoppel are (1) conduct by which one induces another to believe in certain material facts; (2) the inducement results in acts in justifiable reliance thereon; and (3) the resulting acts cause injury. *See id.* Thus, plaintiff must show that defendant's conduct induced it to believe that the policies reported in the notices were valid; that plaintiff justifiably relied on such belief and acted thereon; and that the resulting acts caused injury. *See id.*

■ Defendant first argues that plaintiff has no documentation that the notices were actually sent or received by defendant. Plaintiff offers testimony of three witnesses, however, stating that it was the custom and practice of plaintiff to send a notice immediately to defendant after receipt and approval of each premium finance agreement. Furthermore, plaintiff points out that defendant's Treasurer,

Scott Weicholz, wrote a letter to plaintiff stating that plaintiff was possibly negligent in "[n]ot taking action when [defendant] returned [its] NOTICES OF FINANCED PREMIUM informing [it] that no policy could be found with the premium or account name listed on the NOTICES." Plaintiff has successfully created a genuine issue of material fact with respect to whether the notices were sent and received.

 Defendant further argues that, even if the notices were sent and received, plaintiff was not justified in relying on any alleged lack of response. Defendant argues that plaintiff sought positive confirmation of the underlying policies, yet it took no further steps to confirm that the data reported in the notices was correct after it allegedly received no response. Defendant states that "[s]uch lack of action was unreasonable, particularly in light of the fact that [plaintiff] did not have policy numbers for the alleged policies."

The court finds that a genuine issue of material fact exists with respect to whether plaintiff was justified in relying on any alleged lack of response to its notices. The portion of defendant's motion for summary judgment referencing Count IV is denied.[3]

### B. Plaintiff's Motion for Summary Judgment

Plaintiff argues that it is entitled to summary judgment because defendant is estopped from denying the validity of the premium finance agreements and the issuance of the relevant policies due to its silence after receiving plaintiff's notices, and therefore, pursuant to section 6–1416, defendant is required to return the unearned premiums paid to TSMA. Plaintiff asserts that defendant had a duty to respond to the notices, rather than maintain silence.

As previously stated, to prevail on a claim for equitable estoppel, plaintiff must show that defendant's conduct induced

plaintiff to believe that the policies reported in its notices were valid; that plaintiff justifiably relied on such belief and acted thereon; and that the resulting acts caused injury. See id. As defendant points out, plaintiff's notices requested positive confirmation that the reported data was correct; therefore, assuming plaintiff sent the notices and defendant received them, a genuine issue of material fact exists with respect to whether plaintiff was justified in relying upon any alleged silence of defendant in response to the notices. The court denies plaintiff's motion.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiff's motion for summary judgment (Doc. 53) and defendant's motion for summary judgment (Doc. 57) are denied.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**

---

**3.** Defendant also asserts that plaintiff should be precluded from seeking equitable relief

because of its "unclean hands." The court finds no evidence of unclean hands, however.